**WO**                                    NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Mix, | No. CV-15-01102-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| JPMorgan Chase Bank, NA, | |
| Defendant. | |

At issue is Defendant's Motion for Summary Judgment (Doc. 37, Mot. Summ. J.). The Court also considers Plaintiff's Motion to Stay Action under Federal Rule of Civil Procedure 56(d) (Doc. 42 at 5, 9, Mot. to Stay). Because the parties' briefs were adequate for the Court to resolve the issues arising in the parties' Motions, the Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion to Stay Action under Rule 56(d).

**I.   BACKGROUND**

In January 2015, Amanda Mix (hereinafter "Plaintiff") applied for and accepted a contingent worker position at JPMorgan Chase Bank (hereinafter "Defendant"). (Doc. 38 ¶¶ 15–16.) During the hiring process, Defendant obtained fingerprints from Plaintiff in order to obtain a Federal Bureau of Investigation ("FBI") background check on her. (Doc. 38 ¶¶ 17–18.) As a result of the outcome of the FBI's fingerprint background check, Defendant revoked Plaintiff's offer of employment. (Doc. 1, Compl. ¶ 25.) While Plaintiff alleges she "unsuccessfully attempted to obtain more information about the

background check process," (Doc. 43 ¶ 19), Defendant contends that, after "receiving the fingerprint results from the FBI via Fieldprint," Plaintiff failed to provide additional information needed to "determine Plaintiff's eligibility for assignment," (Doc. 38 ¶ 19).

On June 16, 2015, Plaintiff filed a Complaint bringing a putative class action against Defendant under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. (Compl. ¶ 1.) Plaintiff alleges that Defendant "routinely obtains and uses information in consumer reports to conduct background checks on prospective 'contingent workers,' and frequently relies on such information . . . as a basis for adverse employment actions, including the refusal to hire." (Compl. ¶ 1.) After Defendant "used or obtained a 'consumer report[]' . . . in evaluating Plaintiff for prospective employment," Plaintiff claims that Defendant willfully violated the disclosure and authorization requirements of the FCRA "in violation of Plaintiff's rights and the rights of the other members of the putative class." (Compl. ¶¶ 3–5.) Particularly, Plaintiff states that Defendant violated the FCRA by failing to make "a clear and conspicuous disclosure" to Plaintiff that the "consumer report may be obtained for employment purposes" and by failing to provide "Plaintiff with a copy of her report or a notice of her rights under the FCRA before communicating to Plaintiff that her offer had been revoked." (Compl. ¶¶ 30, 36.)

On August 17, 2015, Defendant filed an Answer (Doc. 13) denying liability under the FCRA. At the Scheduling Conference on December 14, 2015, the Court ordered that each party file a brief "on whether phased discovery in support of the preliminary determination of the threshold issue of standing is or is not appropriate." (Doc. 31.) Defendant filed a Brief in Support of Phased Discovery Regarding the Threshold Standing Issue (Doc. 32, Def.'s Br. on Phased Disc.), contending that "Plaintiff's FCRA claims hinge on a narrow but dispositive issue: was the report at issue a 'consumer report' issued by a 'consumer reporting agency' ('CRA') as those terms are defined by the FCRA? If the information Chase received is not a consumer report, then this case is over." (Def.'s Br. on Phased Disc. at 1.) Accordingly, Defendant argued that "[d]iscovery

should be phased to allow an early determination of whether the report at issue is a consumer report and, thus, subject to the FCRA." (Def.'s Br. on Phased Disc. at 2.)

In its brief opposing phased discovery (Doc. 33, Pl.'s Br. on Phased Disc.), Plaintiff claimed that "whether the FCRA applies to this action at all" is not "a 'threshold' question." (Pl.'s Br. on Phased Disc. at 1.) "Under the plain language of the FCRA, Fieldprint is a [CRA] under § 1681a(f)" and "the information it furnished to Chase about [Plaintiff] constitutes a 'consumer report' under § 1681a(d)." (Pl.'s Br. on Phased Disc. at 1.) As a result, Plaintiff asked that the Court reject Defendant's "request that discovery be limited." (Pl.'s Br. on Phased Disc. at 4.) After considering the parties' briefs, the Court ordered on May 12, 2016 that "the parties may conduct discovery limited to the question of whether, in the context posed by Plaintiff, Fieldprint acts as a [CRA] furnishing consumer reports under the FCRA." (Doc. 35.) The parties were to complete discovery on this issue by June 17, 2016. (Doc. 35.)

On July 1, 2016, after the close of discovery, Defendant filed a Motion for Summary Judgment, contending as follows:

> [T]he FBI is not a [CRA] regulated by the FCRA. Moreover, the method by which [Defendant] obtains the information on applicants—through use of an FBI-authorized 'channeler' of data—is not governed by the FCRA. [Defendant's] FBI channeler, Fieldprint, Inc., does not act as a CRA when it transmits unadulterated information it obtains from the FBI directly to [Defendant]. The necessary conclusion is that the FBI information [Defendant] receives through Fieldprint's channeling services is not subject to the FCRA. Thus, Plaintiff's argument . . . is devoid of merit, and summary judgment is appropriate.

(Mot. Summ. J. at 2.)

On July 28, 2016, Plaintiff filed a Response to Defendant's Motion for Summary Judgment that included, in the alternative, a Motion to Stay Action under Rule 56(d). Plaintiff claims that Defendant "asks the Court to commit a serious error of law in finding that its background check company, Fieldprint, is not a [CRA]" because "the definition of CRA is not case-dependent." (Resp. at 1–2.) "Because Fieldprint 'regularly engages' in the practice of assembling and evaluating consumer information to be sold to third parties

- 3 -

as consumer reports, . . . the information it transmitted to [Defendant] constitutes a consumer report." (Resp. at 2.)

On July 29, 2016, Defendant filed a Reply Brief (Doc. 46, Reply) in support of its Motion for Summary Judgment. To the extent that Plaintiff's Response claims that fitness determination or Criminal History Record Information ("CHRI") adjudication services encompass "evaluating consumer credit information" as that term is used in the definition of a CRA under 15 U.S.C. § 1681a(f), (Resp. at 4–5), Defendant contends that "Fieldprint does not perform fitness determination or CHRI adjudication services" in general, including not for Defendant, (Reply at 3–4).

On August 8, 2016, Plaintiff filed a Motion to Strike Affidavit Attached in Support of Chase's Reply or, in the Alternative, Request for Leave to File a Surreply (Doc. 48), arguing that Defendant included an argument for the first time in its Reply and supported it with a new affidavit. On August 25, 2016, Defendant filed a Brief in Opposition to Plaintiff's Motion to Strike Affidavit (Doc. 49). The Court entered an Order regarding these Motions on August 31, 2016:

> Underlying Plaintiff's request is her position that the Fair Credit Reporting Act (FCRA) applies to any entity that assembles or evaluates information about consumers, whether or not the entity did so in the transaction at issue. (*See* Doc. 42 at 7.) [Defendant] argues that the requirements of the FCRA do not apply to an entity that did not assemble or evaluate consumer information in the transaction at issue, even if the entity may have done so in other transactions. (*See* Doc. 46 at 4–5.) If the Court agrees with [Defendant's] position on this point, a Sur-Reply will not likely be relevant to the Court's resolution of the pending Motion for Summary Judgment. However, because the Court has not yet resolved the issue presented by the parties, the Court will allow Plaintiff to file a Sur-Reply to Defendant's Reply, if she so desires.

(Doc. 50 at 1–2.) Plaintiff field a Sur-Reply (Doc. 52) on September 9, 2016, which the Court has considered along with all of the parties' other briefs.

. . . .

. . . .

. . . .

- 4 -

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

. . . .

. . . .

**B.     Analysis**

At issue is whether there remains a genuine dispute of material fact as to whether Fieldprint is a CRA furnishing consumer reports under the FCRA, 15 U.S.C. § 1681 *et seq*. The FCRA defines a CRA as:

> any person which, for monetary fees . . . *regularly* engages in whole or in part in the practice of *assembling or evaluating* consumer credit information or other information on consumers for the purpose of furnishing *consumer reports* to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

Under the FCRA, a "consumer report" is:

> any written, oral, or other communication of any information *by a consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes.

*Id.* § 1681a(d)(1) (emphasis added). The parties disagree as to whether Fieldprint "regularly assembles or evaluates information about consumers." *See id.* § 1681a(f). As the moving party, Defendant has the burden to demonstrate an absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.

Defendant contends Fieldprint is not a CRA because Fieldprint is an "FBI-authorized 'channeler' of data" that merely "transmits unadulterated information it obtains from the FBI directly to [Defendant]." (Mot. Summ. J. at 2.) Because "Fieldprint does not 'assemble' or 'evaluate' consumer information that it transmits from the FBI to [Defendant] within the meaning of the FCRA," Defendant alleges that the "information provided via Fieldprint's channeling service is not a consumer report." (Mot. Summ. J. at 5, 7.) While not conceding that Fieldprint regularly—or even ever—assembles or evaluates consumer information, Defendant argues that "Fieldprint's status as a CRA is determined by the transaction at issue." (Reply at 4.)

The Court finds that Defendant successfully meets its burden to establish an absence of any genuine issue of material fact. First, Defendant provided evidence indicating that Fieldprint acts as a conduit rather than a CRA. Specifically, Defendant submitted the Declaration of James Figliuolo (Doc. 38-1 at 1–3, Figliuolo Decl.), the Declaration of Morris Gargiule (Doc. 38-2 at 1–3, Gargiule Decl.), and a copy of the National Crime Prevention and Privacy Compact that Defendant entered into with the FBI (Doc. 38-1 at 4–5, Compact). Pursuant to this Compact, Defendant "is granted permission to utilize Fieldprint to perform 'Channeler' functions" requiring access to CHRI "when necessary[] to promote or maintain the security of the banking institution." (Compact at 4.) The only "channeler" functions Fieldprint is authorized to perform include "fingerprint submissions of authorized JPMorgan Chase Bank applicants/employees" and "the concomitant dissemination of national fingerprint-based criminal history record check results to only the authorized officials of JPMorgan Chase who are involved in the human resources decisions." (Compact at 5.) Therefore, Fieldprint electronically submits fingerprints to—and later receives CHRI from—the FBI on behalf of Defendant. (Figliuolo Decl. at 2.)

Notably, the Compact does not explicitly specify that Fieldprint's actions as a channeler will be monitored through the FCRA. (*See* Compact at 4–5.) Rather, according to the Outsourcing Standard for Channelers, Defendant "is responsible for the actions of the contractor and shall monitor the contractor's compliance to the terms and conditions of the Outsourcing Standard for Channelers." (Compact at 5.) Further, through the Outsourcing Standard for Channelers, "the FBI will perform limited auditing functions on behalf of [Defendant]." (Compact at 5.) This suggests that Fieldprint's role as a channeler is akin to an agent acting at the behest of its principals—Defendant and the FBI; therefore, as an agent without control over its principals' employment decisions, Fieldprint is not a CRA. *See Mattiaccio v. DHA Grp., Inc.*, 21 F. Supp. 3d 15, 23–25 (D.D.C. 2014) (finding that "attorney with a clear fiduciary and agency relationship to the employer-client at whose behest the attorney-defendant conducted a background

1 investigation" and who was not shown to have "made the decision to terminate Plaintiff"
2 was not a CRA); *Weidman v. Fed. Home Loan Mortg. Corp.*, 338 F. Supp. 2d 571, 575–
3 77 (E.D. Pa. 2004) (finding that defendant who merely requested "credit reports on behalf
4 of a contracting lender" in order to assist lenders in deciding whether to offer credit, acted
5 as lenders' agent and, therefore, was not a CRA because it acted "at the behest of
6 principals with primary control over the process of obtaining consumer reports and
7 making credit decisions").

The Declaration of Morris Gargiule, Vice President of Operations at Fieldprint, also supports Defendant's contention that Fieldprint is a mere channeler of unadulterated information. According to this Declaration, Fieldprint personnel cannot access, view, analyze, manipulate, alter, or evaluate the CHRI transmitted by the FBI to Defendant. (Gargiule Decl. at 2.) Rather, Fieldprint "provides a technical conduit or connection whereby the FBI can transmit CHRI" to Defendant. (Gargiule Decl. at 2.) According to the Federal Trade Commission's report, *40 Years of Experience with the Fair Credit Reporting Act*:

> An entity that performs only mechanical tasks in connection with transmitting consumer information is not a CRA because it does not assemble or evaluate information. For example, a business that delivers records, without knowing their content or retaining any information from them, is not acting as a CRA even if the recipient uses the records to evaluate the consumer's eligibility for insurance or another permissible purpose.

F.T.C., *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, 2011 WL 3020575, at *22 (July 2011).

Similarly, Fieldprint is not a CRA within the meaning of the FCRA because it "does not 'assemble' or 'evaluate' [the] consumer information that it transmits from the FBI" to Defendant. (Mot. Summ. J. at 5); *see McCalmont v. Fed. Nat. Mortg. Ass'n*, No. 2:13-CV-2107-HRH, 2014 WL 3571700, at *4 (D. Ariz. July 21, 2014) ("Because Fannie Mae is not actively involved in the compilation of the consumer information, it is not regularly assembling and evaluating consumer information and thus it cannot be a

'consumer reporting agency.'"); *Smith v. Busch Entm't Corp.*, No. CV-3:08-772-HEH, 2009 WL 1608858, at \*3 (E.D. Va. June 3, 2009) (holding that the VA State Police Central Criminal Records Exchange is not a CRA merely because it "provides employers [with] criminal conviction data on employees or prospective employees"); *Ori v. Fifth Third Bank, & Fiserv, Inc.*, 603 F. Supp. 2d 1171, 1175 (E.D. Wisc. 2009) ("Obtaining and forwarding information does not make an entity a CRA.") (citing *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) (holding that "a creditor who merely passes along information concerning particular debts owed to it" is not a CRA)); *D'Angelo v. Wilmington Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981) (stating that the FCRA's assembling or evaluating requirement "implies a function which involves more than receipt and retransmission of information"). Furthermore, "the duties imposed on consumer reporting agencies by the Act are such that it is unlikely that Congress intended them to apply to persons or entities remote from the one making the relevant credit or employment decision." *D'Angelo*, 515 F. Supp. at 1253.[1]

Next, Defendant demonstrates that Fieldprint does not "*regularly* engage[] in whole or in part in the practice of assembling or evaluating" information for any third party, *see* 15 U.S.C. § 1681a(f) (emphasis added), through the second Declaration of

---

[1] Defendant contends Plaintiff, "[i]n an effort to avoid the FCRA's plain language, . . . resorts to policy arguments that the FBI CHRI data should be governed by the FCRA."(Reply at 7 n.5). Specifically, Plaintiff states that the "potential for inaccurate or incomplete information" still exists in the FBI's CHRI data, so "[c]onsumers are entitled to see what the employer is seeing before the employer takes adverse action against them." (Resp. at 6). Although Plaintiff claims that "the legislative purpose of the FCRA's provisions concerning the use of consumer reports for employment purposes" supports the conclusion that Fieldprint is a CRA under the FCRA's plain language, (Resp. at 3–4), the Court is not convinced. The primary purpose of the FCRA is "to protect consumers against inaccurate and incomplete credit reporting." *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). "Congress enacted the Fair Credit Reporting Act . . . in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal citation omitted). Furthermore, the Court agrees with Defendant that "[i]f Congress had been concerned about the accuracy of the information provided by the FBI, then it could have made the FCRA applicable to federal agencies." (Reply at 7 n.5); *see Ollestad v. Kelley*, 573 F.2d 1109, 1111 (9th Cir. 1978) ("[T]he lack of express reference to federal agencies in the act or in the legislative history is some indication that Congress did not intend to place federal agencies within the purview of the FCRA.") (citations omitted).

Morris Gargiule, (Doc. 46-1 at 1–2, Gargiule Decl. 2).[2] In this Declaration, Gargiule confirms that "Fieldprint does not perform *any* fitness determination or CHRI adjudication services for *any* private employer." (Gargiule Decl. 2 at 1) (emphasis added). Rather, Fieldprint's affiliate, Business Information Group ("BIG")—a CRA and a separate legal entity—performs these services if they are required. (Gargiule Decl. at 2.) To the extent these fitness determinations or CHRI adjudication services could constitute "assembling or evaluating" information, it is significant that Fieldprint *never* performs these services itself. Consequently, Fieldprint cannot be said to be "regularly" involved in the assembly or evaluation of information for any third party, and is thus not a CRA.

Although not necessary to resolve the present Motion, if the Court were to accept Defendant's alternative argument that the inquiry is limited to whether Defendant

---

[2] Although the term "regularly" is not defined in the FCRA, at least two Federal District Courts have looked to the Fair Debt Collection Practices Act ("FDCPA") for guidance due to the similarities in language between the two statutes. *See Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1056–57 (S.D. Ohio 2002); *Johnson v. Fed. Express Corp.*, 147 F. Supp. 2d 1268, 1275 (M.D. Ala. 2001). In *Johnson*, the court looked to the court's opinion in *Schroyer v. Frankel*, which noted that a debt collector under the FDCPA—defined as "any person . . . who regularly collects or attempts to collect" debts owed to others—"must have more than an 'occasional' involvement with debt collection activities." *Johnson*, 147 F. Supp. 2d at 1275 (quoting *Schroyer v. Frankel*, 197 F.3d 1170, 1173–74 (6th Cir. 1999)). Finding *Schroyer's* analysis persuasive, *Johnson* stated:

> By regulating only those consumer reporting agencies who 'regularly engage' in reporting, Congress opted for incomplete coverage of the industry. Therefore, the court holds that a consumer reporter must provide consumer reports as part of his usual, customary, and general course of business if he is to qualify as a 'consumer reporting agency' under the FCRA. . . . Only those agencies that 'regularly engage' in consumer reporting play a 'vital role in assembling and evaluating consumer credit and other information on consumers.' 15 U.S.C. § 1681(a)(3).

*Id.*

Similarly, the Fifth Circuit noted that "[t]he requirement that a consumer reporting agency engage regularly in the collection of information was obviously intended to protect individuals . . . who engage in activities that might fall within the definition of the FCRA on a casual, one-time basis. *Hodge v. Texaco, Inc.*, 975 F.2d 1093, 1097 (5th Cir. 1992). Other guidelines suggest asking "whether the collection or evaluation of information on consumers is a normal part of the entity's activities and that, whenever the occasion presents itself, the entity disseminates the information." 1 Fed. Reg. Real Estate & Mortgage Lending § 9:6 (4th ed.).

- 10 -

regularly assembles or evaluates information in the context raised by Plaintiff—that is, under the Compact with the FBI—Gargiule's second Declaration affirms that "neither Fieldprint nor any of its affiliates, including BIG, performed a CHRI fitness determination or adjudication on Plaintiff Amanda Mix." (Gargiule Decl. 2 at 2.) Rather than assembling and evaluating consumer information, Defendant asserts "Fieldprint's only function was to serve as a technical connection between [Defendant] and the FBI" by processing "Plaintiff's fingerprints and FBI background check." (Reply at 5.) Defendant argues that, because it has demonstrated that Fieldprint did not assemble or evaluate information on Plaintiff in the transaction at issue, Defendant successfully established that it was not a CRA and thus "no consumer report [is] at issue." (Reply at 3.) A defendant may satisfy its initial burden at summary judgment if it "establishes that there is an absence of any genuine issue of material fact regarding whether it was acting as a consumer reporting agency in the alleged transactions." *Liberi v. Taitz*, No. SACV-11-0485-AG-AJWX, 2012 WL 10919114, at *5 (C.D. Cal. Mar. 16, 2012). "[The defendant] does not need to show that it never operated as a consumer credit reporting agency, only that it did not operate as a consumer credit reporting agency regarding the transactions at issue here." *Id.* (citation omitted); *see also Marricone v. Experian Info. Sols., Inc.*, No. 09-CV-1123, 2009 WL 3245417, at *1 (E.D. Pa. Oct. 6, 2009) ("[W]hether an entity is acting as a consumer reporting agency *in a particular situation* is a fact-specific inquiry. . . . Thus factual discovery will help determine whether Defendants acted as CRAs *in this case*." (emphasis added)). Defendant has demonstrated the absence of a genuine dispute as to whether it is a CRA in its normal activities as well as in the transaction at issue.

On the other hand, Plaintiff fails to demonstrate a genuine issue of fact regarding whether Fieldprint acted as a CRA. Plaintiff only offers speculation, based on broad statements from Fieldprint's website that Fieldprint acted as a CRA in the alleged transaction. (*See* Doc. 43 at 4–6.) However, "[a] summary judgment motion cannot be

defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor*, 880 F.2d at 1045.

Plaintiff claims that "[w]hether Fieldprint adjudicated Plaintiff's report or made a fitness determination *with respect to Plaintiff* is irrelevant" because the "statute deems a person a CRA . . . based on whether it '*regularly* assembles or evaluates' such information." (Resp. at 7.) According to Plaintiff, "the definition of CRA is not case-dependent." (Resp. at 2.) Even if the Court agrees with Plaintiff on this point, Plaintiff has failed to provide the Court with sufficient evidence to show Fieldprint regularly assembles or evaluates consumer credit information at all. The only "evidence" Plaintiff provides on this point is statements Plaintiff pulled from Fieldprint's website that purportedly indicate that all of Fieldprint's activities are governed by the FCRA. (*See* Doc. 43 at 4–6.) Plaintiff's characterization of this evidence is misleading. Plaintiff does not mention another statement from Fieldprint's website—which Defendant provides as evidence—indicating that Fieldprint's *affiliates* actually perform any required fitness determination and CHRI adjudication services. (*See* Gargiule Decl. 2 at 1.) That Fieldprint's affiliates may perform these services—rather than Fieldprint—is significant; Fieldprint and its affiliates are "distinct entities at all times relevant to this litigation." *See Liberi*, 2012 WL 10919114, at *7. Just because Fieldprint's affiliates may offer "some services governed by the FCRA does not mean that all of [Fieldprint's] services are so governed." *Id.*; *see also Zabriskie v. Federal Nat'l Morg. Assoc.*, 109 F. Supp. 3d 1178, 1183 n.6 (D. Ariz. 2014) (finding that Fannie Mae acts as a CRA when it licenses its software to lenders, but emphasizing "the limited scope of this finding" because "[t]he Court does not find that Fannie Mae *is at all times* acting as a [CRA]." (emphasis added)).

Plaintiff's affidavits and evidence fail to contravene Defendant's evidentiary material, which demonstrates that Fieldprint is not a CRA within the meaning of the FCRA. As a result, the Court concludes Defendant is entitled to judgment as a matter of

law on Plaintiff's claims under the FCRA and therefore grants Defendant's Motion for Summary Judgment.

## III. RULE 56(d) MOTION

### A. Legal Standard

Federal Rule of Civil Procedure 56(d) "offers relief to a litigant who, faced with a summary judgment motion, shows the court by affidavit or declaration that 'it cannot present facts essential to justify its opposition.'" *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(d)). Accordingly, the Court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) only applies "where the non-moving party has not had the opportunity to discover information that is essential to its opposition." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (citations omitted). When faced with a Rule 56(d) motion, "the Court should consider whether denying or deferring the motion for summary judgment would promote greater justice." *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, No. 2:10-CV-290-DAE-BGM, 2016 WL 3613278, at *1 (D. Ariz. Feb. 22, 2016). The party requesting the motion to stay under Rule 56(d) must make "[a] good faith showing that a continuance is needed" by demonstrating, via "affidavit or declaration, the specific facts she hopes to elicit from further discovery, that the facts sought exist, and that these facts are essential to resist the summary judgment motion." *Smith v. Barrow Neurological Inst. of St. Joseph's Hosp. & Med. Ctr.*, No. CV 10-01632-PHX-FJM, 2012 WL 3108811, at *2 (D. Ariz. July 31, 2012) (citing *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). "[A] party cannot successfully oppose a summary judgment motion by simply claiming that further discovery may yield unspecified facts that could plausibly defeat summary judgment." *Id.* (citation omitted).

. . . .

. . . .

### B.  Analysis

In the Motion to Stay Action under Rule 56(d), Plaintiff states that "the Court's order did not permit enough time to conduct meaningful discovery" on the issue of whether the information Fieldprint assembles is only obtained from the FBI. (Mot. to Stay at 5 n.2.) "To the extent the definition of 'assembly' requires obtaining information from more than one source—it does not—Plaintiff requests a stay under Rule 56(d)." (Mot. to Stay at 5 n.2.) Plaintiff continues: "[s]hould the Court feel inclined to grant [Defendant's] motion for summary judgment, Plaintiff requests a stay of its ruling to obtain discovery" in order to "see what [Defendant] received about her." (Mot. to Stay at 9.)

Defendant correctly notes:

> The Court entered an Order on May 12, 2016 permitting limited discovery on the issue of "whether in the context posed by Plaintiff, Fieldprint operates as a [consumer] reporting agency." (Dkt. No. 35). The Order required discovery to be "completed" by June 17, 2016. *Id.* Plaintiff did not serve any written discovery on [Defendant] until June 11, 2016. Plaintiff noticed no deposition of [Defendant] and served no deposition subpoenas or subpoenas *duces tecum* on any third parties, including Fieldprint. Nor did Plaintiff alert [Defendant] or the Court that she would be unable to complete discovery within the specified timeframe. Now, in Opposition to [Defendant's] Summary Judgment Motion, Plaintiff claims that she has inadequate information to dispute the facts upon which [Defendant's] Summary Judgment Motion is based.

(Reply at 2–3 n.1.)

Plaintiff did not meet her burden to show that she diligently worked on discovery within the allotted time period, nor did she make a "good faith showing that a continuance is needed." *See Smith*, 2012 WL 3108811, at *2. Plaintiff should have timely notified the Court if she felt she did not have enough time to conduct discovery on the issue in question by the Court's discovery cut-off deadline of June 17, 2016, explaining therein any good faith efforts to comply with the Court's Order.[3] Rule 56(d) only applies

---

[3] In the Affidavit submitted in support of Plaintiff's Response and Motion to Stay, counsel states he "was not prepared to serve and complete discovery" by the deadline set by the Court. (Doc. 44 ¶ 17.) However, Plaintiff did not file a proposed discovery

- 14 -

where the party opposing summary judgment has not had the opportunity to discover information it believes it needs. *See Roberts*, 660 F.3d at 1169. Here, Plaintiff cannot now be heard to complain when she had the opportunity to discover material information, but did not do so diligently and never asked the Court for more time. In other words, it would hardly be just to re-open discovery after Plaintiff disregarded the initial discovery deadline. Furthermore, Plaintiff has "failed to 'proffer sufficient facts to show that the evidence sought exist[s], and that it would have prevented summary judgment.'" *Roberts*, 660 F.3d at 1169 (quoting *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009)). Due to her lack of diligence during the discovery period and failure to meet the Rule 56(d) burden, Plaintiff's request to stay this action under Rule 56(d) is unavailable.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 37).

**IT IS FURTHER ORDERED** denying Plaintiff's Rule 56(d) Motion (Doc. 42 at 9).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly in favor of Defendant on all of Plaintiff's claims against it and close this matter.

Dated this 6th day of October, 2016.

Honorable John J. Tuchi
United States District Judge

---

schedule in her initial brief (Doc. 33) and never filed a motion to extend the discovery deadline set in the Court's Order (Doc. 35).